UTICA,
Aug. 1826.

Andrews
v.
Kneeland.

---

: Andrews *against* Kneeland.

On a sale by sample, the vendor is responsible, that the bulk of the commodity shall be equal in quality to the sample.

An agent or broker having power to sell goods, without any express restriction as to the mode, may sell by sample or with warranty.

And it makes no difference with his authority, whether the principal reside in the same city with him, or reside abroad.

Assumpsit on a warranty, that certain cotton, sold by the defendant to the plaintiff, should be of like goodness and quality with certain samples exhibited ; tried at the *New-York* circuit, *January 7th*, 1824, before EDWARDS, C. Judge.

At the trial, it was proved that the plaintiff, who was a merchant residing in *Boston*, on the 20*th* of *September*, 1821, purchased of *Smidt*, the defendant's broker, 124 square bales of cotton, by sample ; the defendant and the broker residing in the city of *New-York*, where the sale took place. That the defendant consummated the sale by taking a note, in person, at his store in the city. The broker swore that he had no authority to warrant ; but acted as broker for the defendant in selling a large quantity of cotton, of which the cotton in question was a part.

It appeared not to be the general practice, in the city of *New-York*, to sell cotton by sample, though this was sometimes done.

The authority of a broker is not always confined to the power which the principal intends to confer on him ; but may extend to that with which he is apparently clothed in respect to the subject matter of the sale.

The principal is bound by the acts of a general agent, provided they are within the scope of his authority. But an agent constituted for a particular purpose, and under a limited and circumscribed power, cannot bind his principal by an act beyond his authority.

Where an agent, for the purpose of a single act, is not limited as to the manner of doing it, the principal may be bound by his acts, though exceeding the authority intended to be given.

The cotton turned out to be much inferior to the samples.

The judge charged the jury, that the question whether there had been a warranty, depended not only on whether *Smidt* had made a warranty; but whether he had any authority to make one. That unless the defendant had in some way delegated that authority to the broker, the defendant could not be responsible. That if the practice in *New-York* for cotton brokers to warrant on their sales were universal, authority to warrant might be implied from this circumstance. He drew a distinction between general agents who may bind their principals by warranty without express authority, and special agents who have not this power; also between agents residing abroad, or near their principal; and charged that *Smidt*, living near his principal, was to be deemed a special agent; and had no authority to warrant, unless expressly delegated; that a power to sell did not imply a power to warrant; and that the defendant was not bound by a sale by sample, unless he knew that the sale was thus made when it was consummated by his acceptance of the plaintiff's note.

The plaintiff excepted to this charge. The jury found for the plaintiff six cents damages.

A motion was now made, in behalf of the plaintiff, for a new trial. The motion was founded on the bill of exceptions.

*G. Griffin*, for the plaintiff. Every sale by sample is a warranty that the bulk shall correspond with the specimen exhibited. (*Oneida Manuf. So.* v. *Lawrence*, 4 *Cowen*, 440.) A power of sale implies a power to warrant. (*Pal. on Ag.* 161. 3 *T. R.* 757. 4 *id.* 177. 5 *Esp. Rep.* 75. 2 *Campb.* 55.) This is uniformly so, except in the sale of land, where there must be a written power produced; (5 *John.* 58;) or where there is a fraudulent misrepresentation, which is *dehors* the authority. (7 *id.* 390.) I am not aware of any distinction between domestic and foreign principals: nor do I find any authority to support the judge in saying that an express delega-

UTICA,
Aug. 1826.

Andrews
v.
Kneeland.

tion of authority was necessary in this case. *Colden*, senator, in *Perkins* v. *The Wash. Ins. Co.*, (4 *Cowen*, 660, &c.,) *Runquist* v. *Ditchell*, (3 *Esp. Rep.* 64,) and *Thompson*, J. in *The Monte Allegre*, (9 *Wheat.* 644,) will be found to have laid down the true doctrine on the subject.

*H. W. Warner*, contra. The distinction drawn by the judge between a general and special agent, was clearly law; and what he said about the difference between domestic and foreign principals, was altogether unnecessary to the case; because, let the principal reside where he would, here was no more than a special agency. The judge did not charge that there must be an express delegation of authority. He admitted that an implied one was sufficient. We, however, insist that express authority was necessary; *Smidt* being a special agent. Where an agent is employed in business of a particular kind, with power to transact the whole, it is evidence that the principal is willing he should do every thing ordinarily incidental to that branch of business. But it is far otherwise as to a special agency. This is admitted as to lands; and the same reason exists in the case of goods. In both cases the vendee must derive his title under the power. It is in business as in logic; a general agent gives you a general result. A series of instances is a good indication of his power. This may be trusted to; and what is apparently co-extensive with his power, shall not be deemed to go beyond it. Not so of a single instance. There the evidence of the power must be special. It does not follow as an inference. But in the case of a general agent, no farther evidence need be given than the fact of the general power. (*Paley on Agency*, 162, 163, 164, 166. 15 *East*, 408.) The cases cited against us are either exceptions to the rule that the power of a special agent must be shown, founded on usage, as in the instance of a servant selling a horse in 2 *Campb.* 55; or where a knowledge or recognition of the act by the principal, was to be inferred. Such is the case of *Runquist* v. *Ditchell*.

*B. D. Ogden*, in reply, said a man is to be deemed a special agent only when a power is given, and he is restricted to exercise it in a particular way. But if a power be given as in this case, to sell generally, and there be no express prohibition against a warranty, the agency is to be deemed general. This is the import of the English cases cited. And this distinction is expressly sanctioned in *Hicks* v. *Hankin*, (4 *Esp. Rep.* 114.) That case turned upon the distinction. The character of a special agent does not depend on the number of acts he has power to do.

Usage has nothing to do with the question.

*Curia, per* SAVAGE, Ch. J. The sale in this case was clearly a sale by sample. There could be no other, according to the weight of the testimony. That, however, is a question of fact.

It has been deliberately settled by this court, in the case of *The Oneida Manuf. So.* v. *Lawrence*, (4 *Cowen*, 440,) that in case of sale by sample, the vendor is responsible, that the bulk of the commodity shall be equal in quality to the sample.

It is only necessary to inquire whether the judge correctly charged the jury as to the power of the agent.

The difference between a general and a special agent is well understood. The principal is bound by the acts of a general agent, provided they are within the scope of his authority. But an agent constituted for a particular purpose, and under a limited and circumscribed power, cannot bind his principal by any act beyond his authority. (1 *Liverm.* 107-8.) Thus, in *Batty* v. *Carswell*, (2 *John.* 48,) the authority was limited to a single act, to be performed in a particular manner. The authority was to execute a note for $250, payable in six months. The agent gave a note payable in 60 days. This court held the principal not bound. But where the agent is not limited as to the manner of doing a particular act, the principal may be bound by his acts, though exceeding the authority intended to be given to him. Thus, in the case of *Fenn* v. *Harrison*, (3 *T. R.* 757, 4 *id.* 177,) the fact at first ap-

UTICA,
Aug. 1826.

Anderson
v.
Kneeland.

peared to be, that the defendants had instructed their agent to get the bill discounted; but charged him not to indorse it. He, however, did indorse it; and though Lord *Kenyon* was inclined to hold the defendants responsible; yet the rest of the court ruled otherwise; and granted a new trial. Upon the next trial, it appeared that the defendants desired their special agent to get the bill discounted, without restricting his power to endorse. The plaintiff had a verdict, which the court refused to set aside, on the ground that, as the defendants had authorized the agent to get the bill discounted, without restraining his authority as to the mode of doing it, they were bound by his acts.

The authority of a broker to bind his principal, is not, in all cases, confined to the power which the principal intended to confer on him. The interests of the mercantile world require that he should bind his principal within the limits of the authority with which he has been apparently clothed in respect of the subject matter of the sale. (*Long on Sales*, 233. 15 *East*, 38.)

In the case of *The Monte Allegre*, (9 *Wheat*. 644,) *Thompson*, justice, says, " A merchant who employs a broker to sell his goods, knows, or is presumed to know, the state and condition of the article he offers for sale. And if the nature or situation of the property is such, that it cannot be conveniently examined in bulk, he has a right, and it is for the convenience of trade, that he should be permitted to select a portion, and exhibit it as a specimen, or sample of the whole; and that he should be held responsible for the truth of such representation. The broker is his special agent, for this purpose; and goes into the market clothed with authority to bind his principal. In such cases, if the article does not correspond with the sample, the injured purchaser knows where to look for redress; and the owner is justly chargeable with the loss, as he was bound to know the condition of his own property, and to send out a fair sample, if he undertook to sell in that way." This doctrine is supported by abundant authority; and decides that the broker had power to sell

by sample ; and that a sale by sample is a warranty that the bulk shall correspond with the sample.

UTICA,
Aug. 1826.

Andrews
v.
Kneeland.

In this case, it is not denied that the defendant employed the broker to sell the cotton in question. His employment was a general one. There was no restriction as to the mode of sale, whether by sample or otherwise. He had authority to sell as cotton was sold in the due course of business. It appears that the most usual sales of cotton were by inspecting the bulk ; but that it was unusual to sell by sample. The broker, no doubt, however, had authority to sell by sample, if he thought proper ; and, as a sale by sample is of itself a warranty that the bulk corresponds with the sample, he was authorized, by virtue of his employment, unrestricted in the mode to be adopted by him, to bind his principal by such a sale.

Whether the principal and broker reside near each other, or far distant, seems to me not material ; as, in this case, there was no reference to the principal, except as to the mode of payment.

The cases of *Nixon* v. *Hyserott*, (5 *John.* 58,) and *Gibson* v. *Colt*, (7 *id.* 393,) contain nothing opposed to the principles I have advanced. Here there were no written instructions communicated to the party ; nor any fraud.

A new trial must be granted.

New trial granted.