CLARK LOSSEE, Appellant, *v.* SAMUEL P. WILLIAMS, Respondent.

(GENERAL TERM, FOURTH DEPARTMENT, JANUARY 7, 1872.)

An agent, for sale of rights under a patent, agreed to take a note to his principal on such a sale, and then, with the principal's authority, agreed to trade the note for merchandise on his own account with the plaintiff, with an unwritten guaranty of its goodness and collectibility; the note was afterward issued to the principal or bearer, and delivered by the agent, as agreed, to the plaintiff, in payment for goods furnished. *Held*, that the agent acted as agent in transferring the note, and the guaranty bound his principal.

*Held*, also, that the guaranty was not within the statute of frauds.

THIS was an appeal from an order for a new trial, granted upon the defendant's motion at Special Term, after verdict at the circuit for the plaintiff. The facts are stated in the opinion.

*W. Woodbury,* for the appellant.

*C. D. Murray,* for the respondent.

Present—MULLIN, P. J.; JOHNSON and TALCOTT, JJ.

MULLIN, P. J. The first cause of action stated in the plaintiff's complaint is for goods sold and delivered by plaintiff to defendant.

No evidence was given upon this count on the trial, and no further attention need be given to it.

The second cause of action was on the guaranty of the collection of a promissory note made by Margaret F. Arnold for $170, dated October 2, 1866, payable in six months from date, with interest, to Samuel P. Williams or bearer.

It is not alleged nor was it proved on the trial that this guaranty was in writing; on the contrary, it clearly appears that it was not in writing but by parol merely.

The note was received in payment of an interest in a patent right, of which Williams, the defendant, was a patentee, and was sold to plaintiff upon the representation and warranty

that it was good and collectible, and he paid for it in goods out of his store.

The complainant alleges that a suit was brought on said note against the maker, judgment recovered, and execution issued and returned *nulla bona.*

There was a verdict for the plaintiff. The defendant moved for a new trial, which motion was granted, and from that order the plaintiff appeals.

The grounds on which the trial was granted would seem to be that the Arnold note, at the time of the sale to the plaintiff, was the property of one Slawson and not of defendant, and the guarantee, if any, was given by Slawson and not by defendant.

It is proved, by the testimony of both defendant and Slawson, that the latter was the agent of the former in the sale of interests in his patent right for a fence, for some two months in the summer, and until after a negotiation between them and the plaintiff for the exchange of plaintiff's store of goods for an interest in said patent. The negotiation was introduced by Slawson, it was favorably received by plaintiff, and Slawson left, saying defendant would be up and trade with him.

It is said by defendant that he went to see plaintiff about the trade, but they could not agree, and on the same day defendant discharged Slawson from his service, and he was not again his agent until May, 1867.

But notwithstanding this discharge, Slawson, with the consent of defendant, sold to Arnold an interest in the patent, and took Mr. Arnold's note for the amount. He also sold an interest to one Newcomb, with defendant's assent, and took his note, which he (Slawson) held at the time he was discharged and until the trade with plaintiff for those notes; and for these services Slawson was entitled to pay, and Slawson claims that the Arnold note was transferred to him in payment of his services.

The plaintiff does not say in terms that he dealt with Slawson as defendant's agent, yet such was unquestionably his under-

standing of the relation of those persons, and he says he was never informed that the agency had been terminated, but Slawson says he thinks he so told him.   Such evidence cannot overcome the positive denial of the plaintiff.

The impression made upon my mind by the evidence as to termination of the agency is that it was a mere ceremony, an that it was neither the understanding nor the intention of tl parties to discontinue the agency.   It was not in fact term nated.   Slawson continued to act under the arrangement as to compensation first made, and the papers which belonged to the principal at the conclusion of the agency were not surrendered but retained by the agent.

What end was to be attained by this pretended dismissal of Slawson from the defendant's service we do not know, unless it was to enable defendant to get the benefit of the representations as to the value of the patent, and of the notes taken on sales made by Slawson, without defendant incurring any responsibility in reference thereto.

But whether Slawson was agent in the sale of interests in the patent was not the question on which the defendant's liability depends.   Slawson might be agent for that purpose, but not authorized to bind defendant by a guaranty of the collectibility or goodness of the notes.   Yet the fact of agency for defendant' in reference to the sale of interests and the receipt of notes therefor is entitled to some weight in passing upon the other question.

As to the connection of Slawson with the Arnold note, he gives the fullest and clearest relation.

It was the 6th October, 1866, that Slawson talked with plaintiff about the purchase of the Arnold note.   Slawson says plaintiff then understood that defendant was negotiating with Mrs. Arnold and the note was not given, and it was understood that the note was to be dated at the time when he (defendant) should sell.   It (the sale to Mrs. Arnold) could not be a valid transaction between Mrs. Arnold and Slawson and Williams until he (defendant) had complied with the conditions of the written contract, which was dated the 2d October.

Slawson and his wife then *got goods on the credit of the notes* agreed to be sold to the plaintiff. The Arnold note was not in fact delivered to plaintiff until 4th February, 1867, and it was not obtained from Mrs. Arnold until about the middle of November.

On cross-examination Slawson testified that he made the papers between Mrs. Arnold and defendant the same as he did when agent for defendant. He told defendant he could get a note of Arnold when he went to him, and he (defendant) told Slawson to take it, and he took it; told defendant in about a week thereafter he had got it.

In answer to the question, "did he (defendant) pay you your interest in the Arnold note, or pay you anything for the Arnold business?" the witness says: "I understood it so when plaintiff agreed to take the two notes I was going to trade; Williams consented that I should trade the Arnold note out * * Williams said he would trade out the Newcomb note; we were to keep an exact account what each of us had. I had to render him the amount that I received. I was charged with the Arnold note as between me and Williams. I charged myself with the Arnold note and accounted for it."

Now, it is established by this evidence that on the 6th October, when the arrangement was made for the sale to plaintiff of the two notes, the Arnold note was not in existence; that note was thereafter to be made and delivered to plaintiff.

It is also established by this evidence that when that bargain was made, defendant was the party entitled to it; it was to be received in payment of his property, and Slawson had no sort of interest in it.

It is also established that this note was never transferred to Slawson; the only interest transferred to him was the right to trade out the amount of it at the store.

And it is also established that plaintiff derived title to the note as the property of defendant, and no different bargain was ever made with him.

Any claim of title to the note by Slawson, at any time, is shown by his own evidence to be utterly unfounded.

I am of the opinion that when the note was sold it was the property of defendant, and Slawson sold it as his agent.

The Arnold note was sold to the plaintiff in payment of the goods delivered to Slawson, and it was a part of the trade that the collection of the note should be guaranteed to the plaintiff.

The first question is whether the defendant was bound by the contract of guaranty made by his agent, Slawson.

Slawson was a special and not a general agent; but as a spe cial agent, in the absence of any limitation of his authority, he had the power to warrant that the note was good or collect-ible. (*Ferguson* v. *Hamilton*, 35 Barb., 427.)

In that case the defendant made a note payable to one Hale, and gave it to him to raise the money on it. Hale was to have part of the money when raised. Hale offered to sell the note to one Ladd, and represented that it was a good business note and owned by him (Hale). Ladd bought it at a dis-count, and Hale indorsed it. Suit was brought on the note, and defendant set up usury as a defence. The court held that Hale was defendant's agent, and that he was bound by Hale's representations, and was, therefore, estopped from set-ting up the defence of usury. Bockes, J., delivering the opinion of the court, says "the defendant authorized Hale to negotiate the note for their joint benefit; he had not limited Hale's powers except as to the disposition of the avails. Hale was sent forth with what purported to be property, with authority and directions to sell it; not special but general authority; as to that transaction he was clothed with general powers. * * * It is said that an agent, having power to sell goods, without express restriction as to the mode, may sell by warranty." (6 Cow., 354; 6 Hill, 336.)

The learned judge then proceeds to show, by adjudged cases, that representations, declarations and admissions respect-ing the subject-matter of the agency will bind the principal when the acts of the agent bind him. He then proceeds: "It cannot be justly said that the representations in this case were not within the scope of Hale's agency, which was to nego-

tiate a sale and transfer of the note; a power to sell implies the right to use the ordinary means and inducements to accomplish the end. The principal must expect that the agent will speak of the property, its situation, quality, &c. When a note is offered for sale, what questions are ordinarily put in regard to it? Every prudent man, before purchasing, will inquire whether it is a valid obligation or business note, and as to the responsibility of the parties to it. Certainly these are elements of value, and are proper to be considered and discussed by the parties on the negotiation for the sale.

In *Finn* v. *Harrison* (4 D. & E., 177), it was held that the indorsers of a draft, which they had given to an agent to get discounted, were bound by the acts and representations of the agent in procuring the money on the draft. (*Elwell* v. *Chamberlain*, 2 Bosw., 230; *Sanford* v. *Handy*, 23 W., 260; *Smith* v. *Tracy*, 36 N. Y., 79; Paley on Agency, 197, 209, and notes.)

Choses in action on the subjects of purchase and sale, to as great if not a greater extent than any other description of property, and the ability of the parties to them to pay, is as frequently the inducement held out to the purchaser to buy, as is the condition or quality in other personal property. Why should an agent be able to bind his principal by a warranty in the one case and not in the other? Not only is the agent's warranty binding, but his representations as to the condition and value of the property are binding upon the principal. I am unable to perceive any distinction between the power of the agent to bind the principal in the different kinds of property, and I think none exists. It only remains to inquire whether the guaranty of Slawson must be in writing in order to render it valid. The statute of frauds requires that every agreement to answer for the debt, &c., if another, shall be in writing and signed by the party to be charged, &c.

A contract to guaranty the payment or collection of a debt contracted by another is an agreement to answer for the debt of another; but when the guarantee is given on the transfer

by the guarantor of the debt in payment of a debt or other obligation of his own, the contract is not within the statute of frauds.    This was decided in *Brown* v. *Curtiss* (2 Cow., 225). Some doubt was thrown over the case by the cases of *Brewster* v. *Lilew* (4 Seld., 207), and by *Draper* v. *Snow* (20 N. Y., 331).    But the doubt, if there was any, is removed by the case of *Cardell* v. *McNeil* (21 N. Y., 336), in which the doctrine of the case of *Brown* v. *Curtiss* was recognized and affirmed.    So that it is now the law in this State, whatever it may be elsewhere, that a parol guaranty of the payment or collection of a note or bill, transferred in payment for property purchased or debt due by the guarantor, is not within the statute of frauds.

If the foregoing views are correct, it follows:

1. That when the Arnold note was sold to plaintiff it was the property of defendant.

2. That Slawson sold it to plaintiff as the agent of the defendant, with a guaranty that it was collectible.

3. That as such agent he had authority to give such guaranty, and defendant was bound thereby.

4. That such guaranty was valid, though not in writing. The plaintiff was entitled to recover the costs of the action. (*Mosher* v. *Hotchkiss*, 3 Keyes, 161.)

The motion for a new trial ought not to have been granted; the order granting it must, therefore, be reversed.

Order reversed.