## STATE BANK OF PIKE v. PEOPLE'S NAT. BANK OF FRANK-LINVILLE et al.

(Supreme Court, Special Term, Cattaraugus County. July 7, 1909.)

1. **FRAUDS, STATUTE OF (§ 28\*)—PROMISE TO ANSWER FOR DEFAULT OF ANOTHER.**

    While, if, on one selling his note or that of another, a third person guarantees payment at maturity, such promise is within the statute of frauds, not so where one, owning the note of another, transfers it for a consideration, at the same time guaranteeing payment.

    [Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 45; Dec. Dig. § 28.\*]

2. **BILLS AND NOTES (§ 295\*)—NOTES—LIABILITY ON INDORSEMENT.**

    Defendant bank, which sent a note, indorsed by it, to plaintiff bank to discount, was liable on its indorsement, even if not on its oral guaranty of payment.

    [Ed. Note.—For other cases, see Bills and Notes, Dec. Dig. § 295.\*]

3. **FRAUDS, STATUTE OF (§ 28\*)—REDISCOUNTS.**

    Defendant bank, after arranging with plaintiff bank to rediscount, or take on for it, from time to time, according to its needs, notes of customers it had to take care of, orally guaranteeing payment, sent to plaintiff bank notes of customers, in fact not previously discounted by defendant, to take on; plaintiff remitting the proceeds to a third bank to be placed to defendant's credit, or crediting the proceeds to defendant on plaintiff's books, to be checked out by defendant, which was done. *Held* that, as the letters transmitting the notes in substance indicated to plaintiff that the notes were sent for rediscount for the benefit of defendant, plaintiff was justified in acting on that assumption, so that defendant was liable on its oral guaranty.

    [Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 45; Dec. Dig. § 28.\*]

4. **BANKS AND BANKING (§ 105\*)—ACTS OF CASHIER.**

    A cashier of a bank having, as incident to his office, implied authority to borrow money for it, it is bound by his acts and representations in the apparent exercise of such authority.

    [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 252; Dec. Dig. § 105.\*]

─────────

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. FRAUDS, STATUTE OF (§ 28*)—DEBT OF ANOTHER.

After arrangement with plaintiff bank to rediscount or take on, from time to time, notes of customers of defendant bank, with oral guaranty by defendant of their payment, notes were sent to plaintiff, by letters referring to such arrangement; the notes being sent on or before their dates. One note, made by A. to S., individually, S. being cashier of defendant, was sent, by a letter signed "S., Cashier," asking that it be credited to A., who would check it out; and this was done. Another note, made by V., who was a teller and bookkeeper of defendant, to S., and indorsed by S., was sent, by letter signed by V., individually, stating that he would check it out, which he did after it was discounted and placed to his individual credit. Another note, made by S. to the cashier of plaintiff, was sent, by letter signed by S. individually, asking that an outside draft be sent him therefor, which was done; the draft being sent to his order personally. *Held*, that these notes were not rediscounted for defendant, so as to make it liable on its oral guaranty, but were discounted for their makers, to whom the proceeds were paid.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 45; Dec. Dig. § 28.*]

6. FRAUDS, STATUTE OF (§ 28*)—GUARANTY.

. Defendant bank not having become liable on notes when they were discounted by plaintiff bank, subsequent expressions by defendant of a purpose or intention to stand back of them would not make it liable.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 45; Dec. Dig. § 28.*]

Action by the State Bank of Pike against the People's National Bank of Franklinville and its receiver. Judgment for plaintiff in part.

Greenleaf S. Van Gorder and Elijah W. Holt, for plaintiff.
George E. Spring and Carey D. Davie, for defendants.

. WHEELER, J. This action is brought to recover upon an alleged verbal guaranty of the payment of certain promissory notes alleged to have been rediscounted by the plaintiff bank for and at the request of and for the benefit of the defendant bank. The material facts in the case are these:

The State Bank of Pike is an incorporated bank located at Pike, N. Y., and Mr. Greenleaf S. Van Gorder was its president. The People's National Bank of Franklinville, N. Y., was a national bank located at Franklinville, N. Y., and one Edwin D. Scott was its cashier. One Roy W. Van Hoesen was a teller and a bookkeeper in the People's National Bank of Franklinville, N. Y. Some time in July, 1906, Mr. Van Hoesen, at the request of Mr. Scott, the cashier of the Franklinville Bank, called on Mr. Van Gorder, the president of the Pike Bank, and told Mr. Van Gorder in substance that he had been directed to visit Pike and see either Mr. Lyon, the cashier of the Pike Bank, or Mr. Van Gorder, its president, and ascertain whether or not the Pike Bank could rediscount some customers' paper for them. Mr. Van Gorder replied the Pike Bank was in funds, and, if they (meaning the Franklinville Bank) would send over some customers' paper that was all right, he thought the Pike Bank would be able to "take some on" for them, but that he would first have to talk with Mr. Lyon, the cashier of the Pike Bank, who was then absent. Van Hoesen said they would want to rediscount some paper from time

---

¹For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to time as they might need funds; that they were a new bank, just organized; that they had customers that they had to take care of, who had brought their accounts to the bank, and it was necessary to take care of them. Mr. Van Gorder replied he knew nothing about Franklinville people, and would know nothing about the reliability and responsibility of the makers of the notes in that locality. Van Hoesen replied they would send good paper and save the Pike Bank harmless—protect it against any loss—and would see that all paper was paid at maturity. Mr. Van Gorder replied he would only make loans to the bank, feeling and knowing that the Pike Bank was absolutely protected in the matter, and would have to do that in order to protect himself with the directors of the bank.

Some time later Van Hoesen called up the Pike Bank on the telephone, and inquired from Mr. Van Gorder, the president, whether he had talked the matter over with Mr. Lyon, the cashier of the Pike Bank. Mr. Van Gorder stated he had, but told Van Hoesen he wished to talk with Mr. Scott, the cashier of the Franklinville Bank. Mr. Scott then came to the telephone, and Van Gorder then referred to the previous talk he had had with Van Hoesen, and said that Van Hoesen had told him (Van Gorder) at Pike that whatever paper was sent over would be good paper, would be customers' paper, "and that you (meaning the Franklinville Bank) would see that it was paid at maturity; that you wanted to help out these people, and take on some paper because they were customers of yours." Scott replied: "Yes; that is all right." And it was then arranged that the Pike Bank would take on from $2,000 to $3,000 of paper. Scott then assured Van Gorder that "on all the paper that we send over there you need pay no special or particular attention to the makers of the notes, because we will stand behind it."

The version of these conversations as testified to by Van Hoesen differs in some respects from that given by Mr. Van Gorder, and is more favorable to the defendants. Even upon the version of Mr. Van Gorder, it will be seen there is room for argument as to whether all paper to be sent the Pike Bank was to be in the nature of rediscounts for the Franklinville Bank, or in part paper to be discounted primarily for customers of the bank and for their accommodation, with the guaranty of the Franklinville Bank behind it. The plaintiff claims, however, by virtue of this guaranty, the right to recover the amount of certain promissory notes discounted by it, which the makers failed to pay at maturity. None of these notes in question was indorsed by the defendant bank, save one, and if any recovery is to be had it must be by virtue of a verbal guaranty of payment.

The first question presented for consideration is as to the validity and binding force of such guaranties. It is contended by the defendants that such guaranties are within the statute of frauds, and, not being in writing, are therefore void in law. Ever since the decision in the case of Milks v. Rich, 80 N. Y. 269, 36 Am. Rep. 615, it has been finally settled in this state that where the holder of a promissory note, ostensibly acting for himself, sells the same for a valuable consideration, and upon the sale promises orally that the note is good and will be paid at maturity, the promise is not within the statute of frauds,

and the promisor is liable thereon in case of nonpayment. The court said:

"The defendant's promise may be regarded, in effect, not as a collateral promise to answer for the debt of Marsh but as a promise to pay the plaintiff the money he had had, in case Marsh did not pay him, like the promise of one to pay his own debt, in case a third person did not pay it."

The court cited, in support of the doctrine, the following cases: Fowler v. Clearwater, 35 Barb. 143; Dauber v. Blackney, 38 Barb. 432; Lossee v. Williams, 6 Lans. 228; Johnson v. Gilbert, 4 Hill, 178; Brown v. Curtiss, 2 N. Y. 225; Cardell v. McNiel, 21 N. Y. 336; Bruce v. Burr, 67 N. Y. 237. See, also, Brookline Nat. Bank v. Moers, 19 App. Div. 155, 45 N. Y. Supp. 997.

The distinction to be drawn is perfectly plain. If A. sells his note, or another's note, to B., and C. verbally guarantees the payment at maturity, such promise falls within the condemnation of the statute of frauds as being the promise to answer for the debt or engagement of another. If A., however, being the owner of another's note, transfers it for a valuable consideration to B., and at the same time guarantees payment, then the promise of guaranty becomes an original undertaking between A. and B., and is enforceable, as held in Milks v. Rich, 80 N. Y. 269, 36 Am. Rep. 615. In the light of the above rule and distinction, we proceed to an examination of the various notes upon which a recovery is sought in this action.

Among the notes in question was a certain note for $1,000, dated December 30, 1907, payable four months after date, made by the Franklinville Veneer & Lumber Company, to the order of R. W. Van Hoesen, secretary, and indorsed by R. W. Van Hoesen, secretary, R. C. Burnham, E. D. Scott, R. W. Van Hoesen, and the Franklinville Bank. This note was a renewal of a prior and original note, dated August 30, 1907, for a like amount, which was discounted by the Pike Bank on September 4, 1907, at the request of the Franklinville Bank, contained in a letter to the Pike Bank, requesting it to "take on" the note in question by remitting to the Seaboard National Bank of New York City the amount of the note, to be placed to the credit of the Franklinville Bank. This was done. This note appears to have been indorsed by the Franklinville Bank, and that bank is liable by reason of such indorsement, independent of the verbal guaranty claimed.

Another note in suit is a note for $1,000, dated December 2, 1907, made by the Franklinville Veneer & Lumber Company to the order of E. D. Scott and R. W. Van Hoesen, payable two months after date, and indorsed by said E. D. Scott and R. W. Van Hoesen. This appears to have been given in renewal of a prior note for the same amount, dated November 17, 1906, made by the same maker, and on the 20th day of November, 1906, discounted by the Pike Bank at the request of the Franklinville Bank, and the proceeds of which discount were placed to the credit of the Franklinville Bank with the Seaboard National Bank of New York.

A third note in suit is one dated December 16, 1907, for $1,000, made by R. C. Burnham, to the order of R. W. Van Hoesen, payable two months after date, and indorsed by R. W. Van Hoesen and E. D. Scott, upon which note the sum of $200 was paid on December

30, 1907. This was a renewal of a prior note for the same amount, made by the same maker to the same payee, dated July 15, 1907, and discounted by the Pike Bank on July 17, 1907, at the request of the Franklinville Bank. The proceeds of this note were credited to the Franklinville Bank on the books of the Pike Bank, and checked out by the Franklinville Bank.

We are of opinion that the Franklinville Bank became and was liable upon its verbal guaranty for each of the three notes above described. We think the evidence in this case justifies the finding that neither of the three notes described, or either of the other notes in suit (which will be referred to hereafter), were, properly speaking, rediscounts. They were not so treated by the Franklinville Bank. No entry of the notes as being the property of the Franklinville Bank was ever made upon the books of that bank. These notes were never reported as rediscounted paper in the official reports to the government, as required by law if they had, in fact, been rediscounted by the Franklinville Bank.

Mr. Scott and Mr. Van Hoesen were both connected with the Franklinville Veneer & Lumber Company as stockholders or officers, and engaged in raising money for that concern; and we think the evidence warrants the conclusion that, instead of first discounting the paper in question at the Franklinville Bank, it was sent direct to the Pike Bank for discount, and none of the notes in question had, in fact, any legal inception until they had been discounted by the Pike Bank. This conclusion seems to be borne out by the dates of the notes and the dates of their discount at the Pike Bank. Nevertheless, the letters transmitting the particular notes for discount, and the subsequent letters relating to their renewals, in substance, indicated to the Pike Bank that they were sent for rediscount for the benefit of the Franklinville Bank, and in our opinion the Pike Bank was justified in acting upon that assumption, which it did, and credited the proceeds of the discounts, either directly to the Franklinville Bank, or by transferring the amount of the discount to the credit of the Franklinville Bank with the Seaboard Bank in New York.

The fact, however, that the notes were not in reality rediscounts does not, in our opinion, relieve the Franklinville Bank from liability. A cashier of a bank has, as incident to his office, implied authority to borrow money for it, and, in the absence of any statutory restraint, to secure the loan by pledge of its property or funds, and as against third persons the assumption of such authority by the cashier will conclude the bank. Coats v. Donnell, 94 N. Y. 168. The court in that case said:

"The cashier of a bank is its executive officer, and it is well settled that as incident to his office he has authority, implied from his official designation as cashier, to borrow money for, and to bind the bank for its repayment, and the assumption of such authority by the cashier will conclude the bank, as against third persons who have no notice of his want of authority in the particular transaction and deal with him upon the basis of its existence"—citing Curtis v. Leavitt, 15 N. Y. 9; Barnes v. Ontario Bank, 19 N. Y. 152.

See, also, Davenport v. Prentice, 126 App. Div. 462, 110 N. Y. Supp. 1056, and numerous cases there cited.

In the matter of Barnes v. Ontario Bank, 19 N. Y. 152, the cashier of a bank, for the purpose of raising money, made and delivered for negotiation to an agent a certificate that such agent had deposited $5,000 with the bank, no deposit in fact having been made, but the bank was held liable notwithstanding. In the case at bar the Pike Bank had a right to rely on the representation that the notes specified were sent on for rediscount. The cashier of the Franklinville Bank was acting within the scope of his apparent authority, and his representations and engagements bound the bank for which he assumed to act, although in fact the notes in question had never been in the first instance discounted by the Franklinville Bank.

We now proceed to the consideration of certain other and remaining notes not previously discussed. One of these is a certain note for $1,-600, dated January 4, 1908, payable three months after date, made by E. M. Adams to the order of E. D. Scott, and indorsed by E. D. Scott. This note was made as a partial renewal of a prior note for $2,500, dated September 4, 1906, made by the same maker to the same payee, and discounted by the Pike Bank on or about the 4th day of September, 1906. This note was sent to the Pike Bank by a letter signed by E. D. Scott, cashier, dated September 4, 1906, in which the writer says:

"I inclose note of $2,500, as per your talk with Mr. Van Hoesen over the phone. You may credit this to E. M. Adams, and he will check it out."

Adams, the maker, did draw out the money by his personal check on the Pike Bank. We are of the opinion that this transaction clearly shows that the note in question was discounted for the benefit of Adams, the maker, and was not a rediscount for the accommodation of the Franklinville Bank. On the very day the note bears date it was mailed to the Pike Bank, with an explicit direction to place the proceeds of the discount to the credit of Adams, and not to the credit of the bank. This was done, and Adams in fact checked the money out of the Pike Bank by his individual check. The Pike Bank cannot now claim that the transaction was in the nature of a rediscount. They had knowledge to the contrary, and must be deemed bound to take notice of the nature of the transaction just as it was made, and as the officers of the Pike Bank carried it out.

Among other notes on which a recovery is sought are two notes, each dated October 25, 1907, one for $1,000 and the other for $500, made by R. W. Van Hoesen to the order of E. D. Scott, and indorsed by E. D. Scott. The evidence shows that these two notes are renewals of a prior note of $1,500, made by Roy W. Van Hoesen to said E. D. Scott, dated December 24, 1906, and discounted by the Pike Bank. This note for $1,500 was sent to the Pike Bank with a letter, dated December 22, 1906, written and signed by Roy W. Van Hoesen, and addressed to the cashier of the Pike Bank, in which Van Hoesen says:

"As per my talk with Mr. Van Gorder over the phone to-day, I send you note of $1,500 for credit and will check it out."

The note was discounted and placed to the credit of R. W. Van Hoesen, and not to the credit of the Franklinville Bank, and by two checks drawn by R. W. Van Hoesen, each for $750, one dated De-

cember 22, 1906, and one December 27, 1906, the amount was checked out of the Pike Bank. Both these checks were to the order of E. D. Scott, treasurer; Scott being the treasurer of the Franklinville Veneer & Lumber Company, above referred to. As to this note we are unable to see how the plaintiff can maintain that it was a rediscount for the benefit of the Franklinville Bank. It was dated December 24th, and sent to the Pike Bank by letter written the 22d of December, showing it never could have become the property of the Franklinville Bank. Van Hoesen signed the letter as an individual. It went to his credit as an individual, and was treated as his individual transaction. The evidence shows that it was not a rediscount, and the Pike Bank had full knowledge of the fact.

There still remains another note in suit, to wit, one for $350, dated December 2, 1907, purporting to be made by John W. Kales and E. D. Scott to the order of Fred H. Lyon, cashier of the Pike Bank. This note is a renewal of a prior note for the same amount, dated October 2, 1906, purporting to be made by the same parties to the order of said Fred H. Lyon, cashier. It was sent to the Pike Bank by letter, dated October 1, 1906, written and signed by E. D. Scott individually, and not as cashier, in which he says:

"I inclose note of $350, made by myself and Dr. J. W. Kales of this place. Now, if you can use this, please send me New York draft for same. I had rather use this outside than at our own bank. I will inclose five shares of stock as collateral to this."

The Pike Bank discounted the note and remitted by draft to the order of E. D. Scott personally. It needs nothing more than the mere statement of the case to show that this was the individual transaction of Scott with the Pike Bank, and in no sense a rediscount for the benefit of the Franklinville Bank. The very note in question ran direct to the cashier of the Pike Bank, and the money was remitted to Scott personally. It might be added that the signature of Kales to the note was a forgery.

We are forced to the conclusion that all the notes in suit, save the first three referred to in this opinion, were discounted by the Pike Bank, not for the Franklinville Bank, but for the makers of the notes, to whom the proceeds were paid by the Pike Bank. The loans, with the exceptions stated, were to the makers, to whom the proceeds were paid, and the notes never had any legal inception until so discounted by the Pike Bank. It is evident that, in so far as Scott was instrumental in procuring these loans, he was acting as agent for the borrowers, and not as the representative of the Franklinville Bank. We have not overlooked the fact that, in some of the subsequent letters written the Pike Bank in reference to the renewals of these notes and the payment of interest, expressions are used which might be construed as indicating a purpose or intention of the Franklinville Bank to stand back of all the notes held by the Pike Bank. Nevertheless, in determining the liability of the Franklinville Bank, the plaintiff must stand or fall upon the original transaction at the time each note was discounted by it. If the Franklinville Bank did not become liable at the time the original notes were discounted, then there is nothing in

the transactions by which the notes were from time to time renewed which created any new or further liability.

As to the notes in question, other than the first three, we then have presented a case where the notes were in fact discounted for the makers, and where the money advanced went to the makers, and not to the Franklinville Bank. If we assume that the previous arrangement made between the Pike Bank and the Franklinville Bank, through their officers, was in fact intended as a guaranty of all commercial paper sent to it through or by the Franklinville Bank, or its cashier, nevertheless, in so far as such a guaranty related to notes not in fact discounted for the Franklinville Bank, the guaranty falls within the condemnation of the statute of frauds, which declares void all promises to answer for the default of another unless the agreement so to do is in writing. Any agreement made between the parties here was concededly verbal and not in writing.

We therefore conclude that the plaintiff is entitled to recover for the amount of the first three of the notes described in this opinion, but not for the remaining notes for which a recovery is sought. As each party has succeeded in part, the costs of this action will be taxed and adjusted as provided in section 3234 of the Code of Civil Procedure. Let findings be prepared in accordance with the views expressed in this opinion.

So ordered.