Binnard *v.* Spring.

---

---

⬦

---

## BINNARD *vs.* SPRING.

Decisions of the judge, at the circuit, touching the amendment of the complaint, are not proper subjects of exception. They rest in the sound discretion of the court, and are not reviewable on a motion for a new trial.

A bill of sale of a canal boat, executed by F. & N. to B., conveyed all the right, title and claim of the vendors against S. a former owner, by reason or on account of a certain bill of sale of the boat, executed to them by S., for any defect in the title of the boat or otherwise, &c. The bill of sale to B. was executed prior to the discovery of any unsoundness in the boat. *Held* that such bill of sale did not transfer to B. any title to a cause of action in favor of F. & N. against S. for fraud in the sale of the boat by S. to them.

If a vendor is ignorant of any unsoundness or other defect in the article sold, a mere *representation* of soundness will not render him liable, in an action to recover damages for deceit or fraud, upon the subsequent developement of a defect then secret.

If it is intended to make the vendor accountable, under such circumstances, he must be required to *warrant* the thing sound, or free from defects.

At the time of the sale of a canal boat, she was subject to a secret defect— viz. the dry rot—which was unknown to both parties, and could not be known upon mere inspection. The vendees had the same means of detection as the vendor, and examined the boat, and used her for a month without discovering the defect. *Held* that the assertion by the vendor, that she was sound, was not fraudulent; he having good reason to believe her sound.

MOTION by the plaintiff for a new trial, upon exceptions ordered to be heard at the general term in the first instance. The action was brought to recover damages for fraud in the sale of a canal boat by the defendant to the plaintiff's assignors. The defendant executed a bill of sale of the boat, dated April 28, 1863, containing covenants of warranty of

title, and against incumbrances, and to pay and discharge all liens, &c. there might be upon the boat. The consideration was $1000. It is alleged in the complaint that the defendant, before executing the bill of sale "intending to cheat and defraud Friedman & Nusboam (the vendees) in the premises, and as an inducement to them to purchase said boat and property, and with such design and intention, falsely and fraudulently stated, represented, and held out and pretended to Friedman & Nusboam that the boat was a good, sound boat, and would be and was fit for use and navigation on the Erie canal, and would run all the season without any repairs; and that the boat and property was of the value of $1000 and more; that F. & N. relying upon and believing such statement and representation, were induced to and did purchase the boat and property, &c. and received the bill of sale, &c. It is averred that the boat was not good and sound, but was rotten and decayed and wholly unfit for use, &c.; all of which was well known to the defendant. The evidence proved, or tended to prove, all these alleged representations, and some others not alleged in the complaint, except as to the knowledge of the defendant. It also proved that the boat was unsound and of little value. The unsoundness was caused by the "dry rot" in her timbers above the "right water line." The external appearance of the boat was that of entire soundness. She made one trip from Buffalo to Albany and back, and was then put on to the dry dock for some slight repairs, most of which were made without any suspicion of unsoundness in her timbers. A piece of plank had been broken, on her side, and it was necessary to put in a piece some 6 by 14 inches. In attempting to make this repair the "dry rot" was discovered; and by sounding her she was found to be rotten from stem to stern. "The outside of the frame looked good, but strike the timbers with a sledge or maul and they would fly all to pieces." It was not proved, nor did the evidence tend to prove, that the defendant had any knowledge of the unsoundness of the boat.

· The evidence of the plaintiff's title to the cause of action consisted in a bill of sale of an undivided half of the boat, furniture and fixtures, ' &c. executed by Friedman to the plaintiff, dated May 26, 1863, of all the right, title and claim he then had or might have against the defendant by reason or on account of a certain bill of sale from the defendant to Friedman & Nusboam, of the boat, by reason of any defect in the title of said boat, or otherwise, &c., granting unto the plaintiff all right, title and interest which he might have had against the defendant if the said bill of sale had not been made. A like bill of sale, dated June 3, 1863, was executed by Nusboam to the plaintiff. These sales were prior to the discovery of unsoundness.

The motion for a nonsuit was on these grounds : 1st. That the plaintiff had proved no assignment of the cause of action ; 2d. That there was no proof of knowledge on the part of the defendant that the boat was unsound. The plaintiff's counsel asked the court to direct an amendment of the complaint to be made, by inserting an allegation that the defendant falsely and fraudulently represented that the boat had been salted, and that she was but six years old, which representations the defendant knew to be false. The court refused, and the plaintiff excepted. There was also a request that the court direct the pleadings to be amended, so as to conform to the proof. Refusal and exception. The court directed that the plaintiff be nonsuited, and the plaintiff excepted.

*G. Parsons,* for the plaintiff.

*L. S. Rogers,* for the defendant.

*By the Court,* MARVIN, J. (After stating the case.) The decisions of the court touching the amendment of the complaint were not proper subjects of exception. They rested in the sound discretion of the court, and are not reviewable

on this motion for a new trial. We can only examine exceptions properly taken.

It does not appear from the case on what ground the nonsuit was granted. It may have been upon the first, or upon the second ground 'put forth in the motion, or upon both. In my opinion the first ground was sufficient. The plaintiff did not show any title to the cause of action. If any fraud was practiced by the defendant, it was upon his vendees, Friedman & Nusboam, and by representations outside of the bill of sale executed by him to them, and the cause of action arising out of such fraud has not been transferred to the plaintiff. The plaintiff purchased the boat, &c. of Friedman & Nusboam, and all the right they had in and under the bill of sale to them, and the covenants it contained. They in effect assigned this instrument to the plaintiff. At the time they respectively sold their interests in the boat to the plaintiff its unsoundness had not been discovered, and the instruments they executed contain nothing having any reference to the cause of action alleged in the complaint, or which by any fair construction embraced such cause of action. For aught that appears in this case, Friedman & Nusboam may have their action against the defendant for any fraud connected with the sale of the boat to them.

I am also of the opinion that the plaintiff was properly nonsuited upon the second ground, viz. that there was no proof of knowledge on the part of the defendant that the boat was unsound. In my opinion, a jury would not be justified in finding that the representations of soundness, made by the defendants, were fraudulent, in the absence of any knowledge on their part of the secret defect of dry rot. The general rule undoubtedly has been, and I think still is, that if the seller is ignorant of any unsoundness or other defect in the article sold, a mere *representation* of soundness will not render him liable. If it is intended to make the vendor accountable, under such circumstances, he must be required to warrant the thing sound, or free from defects.

(*Seixas* v. *Woods,* 2 *Caines,* 48, the case of the sale of *peachum* wood for *brazilletto.* See also *Holden* v. *Daken,* 4 *John.* 421.) It has been queried whether there was not a warranty in the case of *Seixas* v. *Woods,* but as an authority upon the question of fraud it has not, as I am aware, been questioned. (2 *Kent's Com.* 4th *ed.* 479. *Stone* v. *Denny,* 4 *Metc.* 156.)

I am aware that the old rule, that the *scienter* must be proved, has been somewhat modified, and in this case the plaintiff's counsel claims that it was not necessary to prove that the defendant knew the boat was unsound. The argument is that he *assumed* to have that knowledge, and that this is sufficient to make him liable as for a fraud. *Story on Contracts,* (§ 506,) is cited: "If a party undertake to make a material statement, not knowing whether it be true or false, and thereby mislead another, to his injury, it is no defense that he did not know that the statement was false, since, before making the affirmation, he should have ascertained its truth." Also *Story's Eq.* (§ 193.) "Whether a party thus misrepresenting a fact knew it to be false, or made the assertion without knowing whether it was true or false, is wholly immaterial; for the affirmation of what one does not know or believe to be true is, equally in morals and law, as unjustifiable as the affirmation of what is known to be false." "Whether a party *thus* misrepresenting a fact," &c. Read the previous section, 192: "When the party, intentionally, or by design, misrepresents a material fact, or produces a false impression, in order to mislead another, or to entrap or cheat him, or to obtain an undue advantage of him; in every such case there is a fraud, in the truest sense of the term. There is an evil act, with an evil intent; *dolum malum ad circumveniendum.* And the misrepresentation may as well be by deeds or acts, as by words; by artifices to mislead, as well as by positive assertions." The author then quotes from the civil law, and adds: "The case here put falls directly within one of the species of frauds enumerated by Lord

Hardwicke, to wit, fraud arising from facts and circumstances of imposition."

From the language used by Story in section 193 one might naturally conclude and argue that all representations made by a vendor which were not true would make him liable as for a fraud ; thus confounding all distinctions between mere representations by way of commending the article sold, and intention to *mislead, entrap* or *cheat* the purchaser, and also all distinction between warranties and frauds. In my opinion the learned author did not intend to inculcate any such doctrine. I have looked into most of the cases cited by him, with a view of giving to the language used in the text its proper construction. In *Neville and others* v. *Wilkinson*, (1 *Bro. Ch. R.* 546,) the defendant was proceeding to collect a debt of Neville, which he had represented to the agent of Robinson, with whom Neville was in treaty for the marriage of his daughter, did not exist. It appeared that Neville was apprehensive that Robinson would not consent to the marriage if he knew the amount of his debts, and he represented to the defendant that he had assured Robinson that his debts did not exceed a certain amount. He prevailed upon the defendant to make out his accounts against him (omitting the claim attempted to be collected) for exhibition to Robinson. The marriage was had, Robinson agreeing to give Neville £50,000, with his daughter, &c., being deceived as to the indebtedness of Neville. An injunction was awarded, restraining the defendant from collecting his debt of Neville. The counsel for the defendant argued that it should have appeared that Robinson made it a term in the agreement that Neville's debts should not exceed a certain amount; and that the defendant knew this; and misrepresented to Robinson, who was influenced by such misrepresentation. The lord chancellor, in answer to these positions of counsel, remarked, "the defendant confessed a confederacy to cheat Robinson." The remarks quoted by Story in a note were used in the same connection. "If a man upon a treaty for

any contract, will make a false representation by which he puts the person bargaining under a mistake upon the terms of bargain, it is a fraud; it misleads the parties contracting, on the subject of the contract. It has been said, here is no evidence of actual fraud on Robinson, but only an admission of a combination to defraud him. A court of justice would make itself ridiculous if it permitted such a distinction. Misrepresentation of circumstances is admitted, and there is positively a deception."

Story also cites *Pearson* v. *Morgan*, (2 *Bro. Ch. R.* 388.) John Brown applied to the plaintiff to lend him money upon a portion of £8000, secured, as he claimed, upon land that had descended to his brother James. The plaintiff, before lending the money, informed James of the application, and inquired if the £8000 was a subsisting charge upon the estate. James declared it was, and that the plaintiff might safely advance his money on the security, and the money was so loaned. The case shows that James was mistaken as to the portion being a charge upon the estate. It was held that James was bound by his admission; that he had full notice, and induced the plaintiff to lend his money, which was a fraud that would affect his estate. At the present day we should apply the doctrine of *estoppel in pais* to both these cases. Story also cites *Ainslie* v. *Medlycott*, (9 *Ves.* 13, 21.) The bill was by the husband, to have his wife's portion, a part of which was invested in stock, made up in money to £4000 upon the ground of express contract, or representation, upon which the marriage took place. The articles spoke of £4000 as in settlement. The master of the rolls said "that the husband in this case conceived his wife's portion consisted of £4000 in money, I have no doubt. That the father and mother conceived the same, I as little doubt. What they and the husband supposed he was acquiring was £4000 in money. But that does not determine whether that sum shall be made good to the husband. The question is, whether the representation was so made as to impose an

obligation upon the father and mother, or either of them, to warrant her fortune to be that sum. No doubt, by a representation, a party may bind himself, just as much as by an express covenant. If knowingly he represents what is not true, no doubt he is bound. If without knowing that it is not true, he takes upon himself to make a representation to another, upon the faith of which that other acts, no doubt he is bound; though his mistake was perfectly innocent." The bill was dismissed, upon the ground that the representation did not amount to a warranty, and that the parties proceeded upon a common mistake. Thus is seen the character of the cases to which Story refers as authorities for the language used in the text.

In a previous section, 191, it is stated as an old head of équity, that if a representation is made to another person going to deal in a matter of interest upon the faith of that representation, the former shall make that representation good, if he knew it to be false. The representation must be a matter of substance, and it must actually mislead. If the representation is upon a matter of opinion or fact equally open to the inquiries of both parties, and in regard to which neither could be presumed to trust the other, no relief will be given upon the ground of fraud. (*See also* §§ 195, 197, 198, 199, 200 *a*, 201.)

*Bennett* v. *Judson*, (21 *N. Y. Rep.* 238,) is much relied upon by the plaintiff's counsel. The plaintiff purchased land situate in Illinois, upon representations grossly incorrect in particulars material to its value, though the evidence tended to prove that the defendant and his agent were ignorant that such description was false. The case was submitted to the jury upon the question whether a fraud had been practiced, and the verdict was for the plaintiff. Judge Comstock, in delivering the opinion of the court, said that the statements were so minutely descriptive of the land that on their face they clearly imported a knowledge of the facts, on the part of the person making them; that the evidence on

the part of the defendant gave a somewhat different complexion to the case, but the question of fact was fairly submitted to the jury.   He then states the question of law to be whether the representations could be deemed fraudulent unless they were known to be false.   The affirmative is asserted, and the language of *Story (Eq.* § 193) is quoted, and the learned judge adds, that the representation made by the defendant's agent were proved to be grossly false, and they could not be honestly made, when he had not the slightest knowledge of the subject to which they related.   The plaintiff knew nothing of the lands which he was about to buy.   If these statements, as to the situation and characteristics of the lands, were made with an intent that he should rely upon them, it was as much a fraud as if they were known to be untrue. He cites *Stone* v. *Denny,* (4 *Metc.* 151, 161,) and to which I refer as in point in this case, and as containing a very able review of the previous cases, and a clear statement of the distinction between cases of warranty and fraud.   The law is laid down to be, "that to maintain an action of deceit for a false representation not amounting to a warranty, it is necessary to show that it was fraudulently made, or that it was effected by an unlawful act.   Such fraud will be inferred when the party makes a representation which he knows to be false, or as to which he has no knowledge or information, and no ground for refusing a belief; and in such cases the party would be held liable for his false representation. So, also, if he positively affirms a fact, as of his own knowledge, and his affirmation is false, his representation is deemed fraudulent."

The case under consideration does not come within these principles and authorities.   The unsoundness of the boat was unknown to the parties alike, and it could not be known upon mere inspection.   The defect was secret.   The vendees had the same means of detection as the vendor.   They examined the boat, and used her for a month without discovering the defect.   The assertion by the vendor, that she was sound,

was not fraudulent. He had good reason to believe that the boat was sound. He had used her for years, and she had presented no evidence of unsoundness. The vendees were not *deceived* by the representation. The action is for damages for *deceit* or fraud; not for damages for breach of warranty. Had the latter action been brought, a more serious question would have been presented; that is, whether the defendant did not intend to warrant the soundness of the boat; and whether the vendees did not so understand, and in fact purchase with a warranty. But this question is not in the case, and I have not considered it.

The motion for a new trial must be denied, and the defendant must have judgment.

[ERIE .GENERAL TERM, November 21, 1864. *Davis, Grover, Daniels* and *Marvin,* Justices.]