WILLIAM F. HAWKINS, Respondent, *v.* CLIFFORD PEMBERTON
et al., Appellants.

In order to constitute a warranty upon a sale, it is not necessary that the
representation should have been intended by the vendor as a warranty.
If the representation is clear and positive, not a mere expression of opin-
ion, and the vendee understands it as a warranty, and, relying upon it,
purchases, the vendor cannot escape liability by claiming that he did
not intend what his language declared.

There is no distinction in principle between a representation as to the
quality and condition of an article, and one as to its character; what
would amount to a warranty in the one case is a warranty in the other.

Defendants purchased at auction an article, relying upon the representation
of the auctioneer that it was "blue vitriol." It had the appearance of
that article, and by no examination practicable at the time could they
discover that it was not. It was, in fact, what was known as mixed or
"salzburger vitriol," composed of a small proportion of "blue vitriol,"
the residue being green vitriol, an article much less valuable. Defend-
ants ascertaining the true character of the article refused to take and
pay for it, and it was again sold upon their account. In an action to
recover the loss, the court directed a verdict for plaintiff. *Held*, error;
that the representation at the sale amounted to a warranty; at least the
court should have submitted the question to the jury.

The authorities upon the subject of warranty, collated and discussed.

(Argued May 15, 1872; decided September term, 1872.)

APPEAL from judgment of the General Term of the Superior
Court of the city of New York in favor of plaintiff, entered
upon an order denying motion for a new trial, and directing
judgment upon verdict.

This action was brought to recover damages for an
alleged breach of contract of purchase. The defence was

a breach of warranty as to the character of the article purchased, also fraud. On the 16th of January, 1867, Burdett, Jones & Co., who were auctioneers in the city of New York, sold for the plaintiff twenty-three barrels of what was called blue vitriol. · The auctioneer, at the time of the sale, the plaintiff being present, stated that the article was " blue vitriol, sound and in good order." The defendants, being the highest bidders, became the purchasers at eight cents per pound, relying upon the representation of the auctioneer, that it was " blue vitriol," and believing that it was such. At the time of the purchase, the defendants examined some of it, and it had the appearance of blue vitriol, being blue. They took a sample of it away, and the next morning found that it had turned nearly all white on the surface from exposure to the air, and concluding it was not blue vitriol, they immediately notified the plaintiff that they would not take it. The plaintiff then notified them that he should sell it upon their account and look to them for any loss. He accordingly did sell it at auction for about five cents per pound, and the loss was near $400, which this action was brought to recover. It was subsequently discovered, by chemical analysis, that the article contained only from seventeen to twenty-five per cent of blue vitriol, chemically called sulphate of copper, and that the balance was mostly green vitriol, chemically called sulphate of iron or copperas. It was not possible at the time of the sale to discover, by any examination which could then be made, the true character of this article. It could be discovered by exposure for some hours to the air or by chemical analysis. This article had just been imported from Germany, and it was shown by a manufacturing chemist, who formerly resided in Germany, that it was known there as saltzburger vitriol, and not as blue vitriol. A chemist, sworn on behalf of the plaintiff, testified that it was not blue vitriol, nor white vitriol, but, chemically speaking, mixed vitriol. While sulphate of copper was worth from eight to nine and a half cents per pound, sulphate of iron was worth only one and a half cents per pound.

At the close of the evidence upon the trial, defendants requested to go to the jury upon the questions of breach of warranty and fraud. The court refused the request, and directed a verdict for the plaintiff, and ordered the exceptions to be heard in the first instance at the General Term. A verdict was rendered accordingly.

*Ira D. Warren* for the appellants. The question whether the words used were understood and intended as a warranty was a question of fact for the jury. (*Duffee* v. *Hason*, 8 Cow., 25; *Whitney* v. *Sutton*, 10 Wend., 412; *Cook* v. *Mosley*, 13 id., 277; *Stryker* v. *Burgen*, 15 id., 490; *Rogers* v. *Ackerman*, 22 Barb., 134; *Richardson* v. *Mason*, 53 id., 601; *Blackeman* v. *Mackay*, 1 Hilt., 226; *Bradford* v. *Bush*, 10 Ala. [N. S.], 386; *Manill* v. *Wallace*, 9 N. H., 111; *Tottle* v. *Brown*, 4 Gray, 457; *Foster* v. *Caldwell*, 18 Vt., 176.) No particular form of words is necessary to constitute a warranty. (*Chapman* v. *Murch*, 19 J. R., 290; *Sweet* v. *Bradley*, 24 Barb., 549; *Wilbur* v. *Cartwright*, 44 id., 536; *Carly* v. *Wilkins*, 6 id., 557; *Holman* v. *Dord*, 12 id., 336; *Munson* v. *Lombard*, 18 Pick., 66; *Beeman* v. *Buck*, 3 Vt., 53; *Roberts* v. *Morgan*, 2 Cow., 438; *Henshaw* v. *Robbins*, 9 Metc., 83; Story on Sales, §§ 167, 357, note 1.)

*R. S. Emmett* for the respondent. Defendants cannot rescind the purchase of the goods because they proved to be of an inferior or different character than was represented at the sale. (*Seixas* v. *Woods*, 2 Caines, 48; *Swett* v. *Colgate*, 20 J. R., 196; *Welsh* v. *Carter*, 1 Wend., 185; *Carley* v. *Wilkins*, 6 Barb., 558; *Holden* v. *Dakin*, 4 id., 421.) Naming an article by which to sell it is not a warranty. (*Seixas* v. *Woods*, 2 Caines, 48; *Swett* v. *Colgate*, 20 J. R., 196; *Welsh* v. *Carter*, 1 Wend., 185; *Holden* v. *Dakin*, 4 J. R., 421.)

EARL, C. This action was brought against the defendants as purchasers of an article called, at the time of the sale, blue

vitriol, to recover damages for refusing to take and pay for the same, and upon the trial the court refused to submit the evidence to the jury and ordered a verdict for the plaintiff.

The defendants failed to establish their defence of fraud, and upon that question I think there was no evidence to submit to the jury. We have only, therefore, to consider whether there was evidence tending to show that the plaintiff at the sale warranted the article to be blue vitriol, sound and in good order, and whether there was a breach of this warranty.

It is unquestioned that there was a warranty that the article was sound and in good order, and I am quite clear that there was no breach of this warranty. It was good, sound saltzburger or mixed vitriol. It was just as it was made; not damaged, or in any way out of order. It was in its natural, normal condition, and it could not be said of· such an article that it was unsound.

Did the plaintiff warrant the article to be blue vitriol? It is unquestioned that at the time of the sale, through his auctioneer, he represented it to be blue vitriol, and that the defendants bought it as such, relying upon that representation. To constitute a warranty, it is not necessary that the word warranty should be used. It is a general rule that whatever a seller represents, at the time of a sale, is a warranty. (*Wood v. Smith*, 4 Car. & Payne, 45.)

In *Stone* v. *Denny* (4 Metcalf, 151) it is said that the courts in their later decisions "manifested a strong disposition to construe liberally, in favor of the vendee, the language used by the vendor in making any affirmation as to his goods, and have been disposed to treat such affirmations as warranties whenever the language would reasonably authorize the inference that the vendee so understood it."

In *Oneida Manufacturing Society* v. *Lawrence* (4 Cowen, 440) Chief Justice SAVAGE says: "There is no particular phraseology necessary to constitute a warranty. The assertion or affirmation of a vendor concerning the article sold must be positive and unequivocal. It must be a representation which the vendee relies on, and which is understood by

the parties as an absolute assertion, and not the expression of an opinion." And generally, where the representation is not in writing, the question of warranty is to be submitted to the jury. (*Duffee* v. *Mason*, 8 Cowen, 25.)

It is not true, as sometimes stated, that the representation, in order to constitute a warranty, must have been intended by the vendor, as well as understood by the vendee, as a warranty. If the contract be in writing and it contains a clear warranty, the vendor will not be permitted to say that he did not intend what his language clearly and explicitly declares; and so if it be by parol, and the representation as to the character or quality of the article sold be positive, not mere matter of opinion or judgment, and the vendee understands it as a warranty, and he relies upon it and is induced by it, the vendor is bound by the warranty, no matter whether he intended it to be a warranty or not. He is responsible for the language he uses, and cannot escape liability by claiming that he did not intend to convey the impression which his language was calculated to produce upon the mind of the vendee.

Here it is not questioned that the language used was sufficient to constitute a warranty that the article sold was sound and in good order; and why should it not as well extend to the character of the article? When a buyer purchases an article whose true character he cannot discover by any examination which it is practicable for him to make at the time, why may he not rely upon the positive representation of the seller as to its character as well as to its quality and condition? I can discover no distinction in principle in the two kinds of representation; and yet it is claimed in behalf of the plaintiff that there is a distinction, and certain cases are cited to uphold it, which I will proceed briefly to consider.

The first is the celebrated case of *Chandelor* v. *Lopus* (Cro. Jac., 4). That was an action upon the case; and the plaintiff alleged in his declaration that the defendant sold him a stone which he affirmed to be a bezoar stone, whereas it was not a bezoar stone. The defendant pleaded not guilty, and the plaintiff had a verdict. The case was taken by writ of

error to the Exchequer Chamber, and it was there held that the declaration was not good; "for the bare affirmation that it was a bezoar stone, without warranting it to be so, is no cause of action." The court say : "Every one, in selling his wares, will affirm that his wares are good, or the horse which he sells is sound; yet if he does not warrant them to be so it is no cause of action." This was the reason assigned for the decision. It was not denied that the defendant would have been liable if he had warranted the stone; but a mere affirmation was held not to be a warranty. No distinction was made between an affirmation as to the character of an article and an affirmation as to its condition or quality. The doctrine laid down is that a mere affirmation or representation as to the character or quality of goods sold will not constitute a warranty; and that doctrine has long since been exploded, and the case itself is no longer regarded as good law in this country or England. (Hilliard on Sales, 237, note; 2 Kent's Com. [Comstock's ed.], 633, note *a;* 2 Smith's Leading Cases [5th Am. ed.], 238; *Bradford* v. *Manly*, 13 Mass., 139; *Stone* v. *Denny*, 4 Metcalf., 151.)

The case of *Seixas* v. *Woods* (2 Caines, 48) seems to have been decided mainly upon the authority of the case of *Chandelor* v. *Lopus*. That was an action on the case for selling *peachum* wood for *brozelletto;* the former worth hardly anything, the latter of considerable value. The defendant advertised the wood as *brozelletto*, showed plaintiffs the invoice in which it was so described, and billed it to the plaintiffs as such. The plaintiffs had a verdict, subject to the opinion of the court; and the court held that there was no express warranty, and that the defendant was not, therefore, liable. There was no intimation in the opinion delivered that there was any difference between a warranty as to the character of an article sold and a warranty as to its condition and quality. The court simply held that the representations on the part of the defendant did not amount to an express warranty. They were laying down broadly the common-law doctrine of *caveat emptor*, and combating the

implied warranties of the civil law. Hence great stress was laid upon the requirement of an *express* warranty. The rule, as thus laid down, has been thoroughly overturned since the courts hold that any positive affirmation or representation as to the character or quality of an article sold may constitute a warranty. The case has been much questioned, and can no longer be regarded as authority for the precise point decided. (2 Kent's Com. [Comstock's ed.], 633; *Stone* v. *Denny*, 4 Metcalf, 151; *Henshaw* v. *Robins*, 9 Metcalf, 83, 89; *Binnard* v. *Spring*, 42 Barb., 470; *Hart* v. *Wright*, 17 Wend., 267, 271; *Bonekins* v. *Bevan*, 3 Serg. & R., 37.) The case holds that a vendor is liable upon an express warranty of the character of the article sold; and the more recent cases hold that a positive affirmation, understood and relied upon as such by the vendee, is an express warranty.

The case of *Swett* v. *Colgate* (20 John., 196) is quite analogous to the case of *Seixas* v. *Woods*, and was decided mainly upon the authority of that case. The defendants purchased at auction, goods invoiced, advertised and sold as *barillo*, when in fact it was *kelp*, a much inferior article. It came before the Supreme Court upon a case containing the facts; and the court, exercising the province of a jury, drew the inference from all the facts of the case that there was no warranty, laying down, however, the rule that if there had been a warranty, the vendors would have been liable. No intimation is contained in the case that there is any difference between an affirmation by the vendor as to the character of the article sold and one as to its quality or condition. Upon the same state of facts, as the law is now settled, it would be a question of fact for the jury whether or not there was a warranty.

The cases of *Seixas* v. *Woods* and of *Swett* v. *Colgate* have been frequently cited in our courts, and have doubtless influenced, and it may be controlled, the decisions in other cases. The propositions of law announced in them are sufficiently correct; but in view of the rules of law, as now settled in this and other States, I am of opinion that the law was not properly applied to the facts appearing in those cases.

Here there was a positive representation that the article sold was blue vitriol; the plaintiff meant the purchasers to understand that it was blue vitriol, and he sold it as such. The defendants relied upon the representation, believing it to be blue vitriol, and bought it as such. If upon these facts the court was not authorized to hold as matter of law that there was a warranty, it was at least bound to submit the question of warranty to the jury.

In *Allan* v. *Lake* (18 Adolphus & Ellis, N. R., 561) the defendants sold plaintiff a parcel of turnip seed and gave them a sold note, in which it was described as "Skirving's Swedes." It proved not to be such, but of an inferior and spurious kind. The Court of Queen's Bench held that the statement in the sold note was not mere representation or matter of description, but that it amounted to a warranty that the seed was Skirving's Swedes.

In *Bridge* v. *Main* (1 Starkie, N. P., 505) the defendant sold to the plaintiff a quantity of scarlet cuttings intended for the Chinese market, and which were understood among merchants to mean cuttings of cloth only, without mixture of serge or other materials; and it was proved that the article sold contained a quantity of serge, and that a part consisted of much smaller shreds than that usually sent to China, and that it would be very unprofitable, if not wholly unsalable. There was no special warranty, but it appeared that in the bill of parcels the goods were described as scarlet cuttings, and Lord ELLENBOROUGH ruled if they were sold by the name of scarlet cuttings and were so described in the invoices, an undertaking that they were such must be inferred.

In *Power* v. *Barham* (4 Adol. & Ellis, 473) the action was for breach of warranty in the sale of pictures. It was proved, among other things, that the defendant, at the time of the sale, gave the following bill of parcels: "Four pictures, views in Venice. Canaletto. £160." The judge left it to the jury, upon this and the rest of the evidence, whether the defendant had contracted that the pictures were those of the artist named, or whether his name had been used merely as matter of description or intimation

of opinion. The jury found for the plaintiff, saying that the bill of parcels amounted to a warranty. The King's Bench held that the question of warranty was rightly left to the jury, and that the verdict should not be disturbed. Lord DENMAN says: "It was for the jury to say, under all the circumstances, what was the effect of the words, and whether they implied a warranty of genuineness, or conveyed only a description or an expression of opinion."

In *Bonekins* v. *Bevan* (3 Serg. & Rawle, 37), ROGERS, J., says: "From a critical examination of all the cases, it may be safely ruled that a sample or description in a sale note, advertisement, bill of parcels or invoice is equivalent to an express warranty that the goods are what they are described or represented to be by the vendor."

In *Bradford* v. *Manly* (13 Mass., 144), Chief Justice PARKER refers to a case which came before him at *nisi prius*, of which he says: "An advertisement appeared in the papers, which was published by a very respectable mercantile house, offering for sale good Caraccas cocoa. The plaintiff made a purchase of a considerable quantity and shipped it to Spain, having examined it at the store before he purchased; but he did not know the difference between Caraccas and other cocoa. In the market to which he shipped it there was a considerable difference in value in favor of Caraccas. It was proved that the cocoa was of the growth of some other place, and that it was not worth so much in that market. I held that the advertisement was equal to an express warranty; and the jury gave damages accordingly. The defendants had eminent counsel, and they thought of saving the question, but afterwards abandoned it and suffered judgment to go."

In *Henshaw* v. *Robins* (9 Metcalf, 83) it was held, in a case quite analogous to the one now under consideration, that where a bill of parcels is given upon a sale of goods, describing the goods or designating them by a name well understood, such bill is to be considered as a warranty that the goods sold are what they are thus described

or designated to be; and that this rule applies, though the goods are examined by the purchaser at or before the sale, if they are so prepared, and present such an appearance as to deceive a skillful dealer. It can make no difference that, in most of the cases cited, the description of the article sold was contained in a sale note or bill of sale. The same affirmation made orally must, upon principle, have the same force and effect.

I, therefore, reach the conclusion, both upon principle and authority, that upon the facts of this case a jury might properly have inferred that there was, upon the sale, a warranty that the article sold was blue vitriol. It was, at least, the duty of the court to have submitted the question of warranty to the jury. I think the facts were so clear and undisputed that the court could, without error, have decided, as a question of law, that there was a warranty, but this it is unnecessary to decide upon this appeal.

The only remaining question to be considered is, whether there was a breach of this warranty, and this can need but little discussion. The article sold, if it was known at all in market, was known by another name. It had only from seventeen to twenty-five per cent of blue vitriol in it. It was not an inferior article of blue vitriol, but a different substance with a small admixture of blue vitriol.

The judgment should, therefore, be reversed and a new trial granted, costs to abide event.

All concur.

Judgment reversed.