RICHARD VAN WYCK *against* RICHARD H. ALLEN AND ANOTHER.

(Decided April 3d, 1876.)

Where the defendants, seed dealers, sold to the plaintiff certain seed as seed of the variety known as flat Dutch cabbage seed, raised by Van Wycklen, on Long Island, who raised it in a locality peculiarly adapted for raising seed that would head into cabbages: *Held*, that this amounted to a warranty that it was not only seed of that variety, but that it had been raised by Van Wycklen on Long Island.

Where the plaintiff, a farmer, purchased seed from the defendants, which they warranted was cabbage seed of a particular variety and growth, with the intention of planting it and raising a crop of cabbages, and the defendants knew with what intention he made the purchase: *Held*, that the measure of damages for a breach of the warranty where there was no crop at all produced, was the fair value of the crop which would under ordinary circumstances have been raised if the seed had been what it was represented to be, taking into consideration all the hazard arising from the elements, or from natural causes, which might have prevented a full crop, and deducting what it would cost to harvest the crop and prepare it for market.

APPEAL by defendants from a judgment of this court, entered on the verdict of a jury, after a trial before Judge ROBINSON.

---

* On the reargument the court adhered to the opinion that the judgment ought to be reversed, and so ordered.

Van Wyck v. Allen.

The action was brought to recover damages for a breach of warranty by the defendants, on a sale by them of one and a half pounds of cabbage seed (for the price of nine dollars), which they had represented and warranted to be the Van Wycklen early flat Dutch cabbage seed. It was alleged in the complaint, and proved on the trial, the plaintiff was a farmer on Long Island, and bought the seed for the purpose of planting it and raising a crop of cabbages, and that this fact was known to the defendants. The nature of the evidence on the trial, and the points raised on the appeal, which are not fully set forth in the opinion, are shown in the portions of the judge's charge to the jury and the requests to him to charge, given below.

Judge ROBINSON charged the jury, among other things, as follows :

The first question, therefore, which you are to address yourselves to is, whether or not there was any such a warranty of this article, either express or implied, as is alleged in this complaint. . The complaint is special in stating that the article which plaintiff bought was early flat Dutch cabbage seed, and that it was represented to have been raised by Van Wycklen, on Long Island. How far there is any dispute in that respect, as far as the name of the article is concerned, as far as the designation of it by the defendants themselves in the packages which they sold, and as far as it was designated as described in the complaint, and by the testimony of the plaintiff in the action, is for you to say. You are to consider, therefore, did they sell to Mr. Van Wyck flat Dutch cabbage seed, raised by Van Wycklen, on Long Island ? That is the first question, and how far the plaintiff himself is contradicted by any of the facts which have been presented on the part of the defendants, and how far he is supported by bags presented here in evidence, is for you to determine.

There is a point raised by counsel for the defendants, that this representation, if any were made, was that the article was Van Wycklen's flat Dutch cabbage seed, would have been fully represented, and any bargain for such an article would have been fully complied with if an article produced from seed which originally came from Van Wycklen had been furnished,

and would be an article of the description referred to in the sale. The difference between this view, so far as I understand it, and that presented by the other side, is a technical one, and it is further urged on the argument that if this seed was represented to have been seed raised on Long Island, it was then fully complied with by supplying this seed, raised in Rhode Island, by Mr. Potter, of the like character and quality.

Now I do not regard the question one of any great importance whether this seed was raised on Long Island or not, if it was the character of seed which was sold, and as to which you must find the warranty made to have been of the Van Wycklen variety, and to have been early flat Dutch cabbage seed. After all, it strikes me that the material question is whether the seed supplied agreed with the demand which was made.

If it was actually a good seed, which had been raised by Van Wycklen himself, on Long Island, or had been the product of Van Wycklen's crop, raised in the city of New York, or elsewhere, and it turned out to have been such seed, I can conceive no ground for any complaint, no ground for damage to be presented before a jury, unless there was something in the particular product of the thing by way of Van Wycklen cabbage or Van Wycklen seed of subsequent production which might affect its value. The chief consideration is, was this the kind of cabbage seed that was sold to the plaintiff, or represented to have been sold to him?

The next question that arises is, was there in reference to this cabbage seed, as sold, a warranty that it was a particular article. This question of warranty or no warranty is a very broad one. As a matter of representation as to an article before buyer and seller, where it is open to the inspection of each, and the seller makes some commendation of the article, it is nothing but the expression of opinion, and it constitutes no warranty. So, too, if you own a particular article, and, in a negotiation for its sale, make a particular recommendation or commendation to induce one to make a purchase, and that negotiation should be entirely interrupted, and you should meet again in reference to the article, he would have no right to assume what you had said before had application to the particular thing you were negoti-

ating about at the subsequent time, particularly if the negotiation was in relation to a matter of so evanescent a character as cabbage seed, because the testimony shows, that the thing itself is utterly undistinguishable, or its character, or variety.  Now the law recognizes a warranty as either implied or expressed.

If this was sold as a particular article, known in the market by a particular name, the law implies that in such a case the article is of that character, kind and description.  So, too, if you go to a person and say to him, "I desire an article for a special purpose; have you got it? will you sell it to me?" Knowing that I am relying on your compliance with my request, the law implies in that case a warranty of the thing you furnish which accords with the request made to you for its purchase.    You have the testimony before you as to what this article, after being sown and planted, developed.

You have had the testimony of the witnesses before you as to whether or not the thing which brought forth this particular vegetable was early flat Dutch cabbage seed or not, or whether it was cabbage seed at all or not; it is for you to determine that question as a matter of fact.

I know of no other views that particularly address themselves to my mind that I should suggest to you in this connection.  If the cabbage seed was sold as a particular kind and character of seed, to be used and planted upon this man's property, you, as I remarked, have a right to imply a warranty in that respect; if you find there was a breach of the warranty, then arises the question of damages.    Damages resulting from breaches of contract are extremely various in the character which the law accords to them, arising out of the circumstances of the case, and the proceedings of the party had under the contract; if a contract is made to-day with a person, of a special character, and he breaks it to-morrow, the rule of damages there is the profit which would have directly resulted from the performance of the contract; if it is a contract for the building of a house, and the party proceeds to a certain extent to build the house, and the contract is broken when it is partly completed, the builder is entitled as damages to compensation for what he has done, and to loss of profits he has suffered upon the residue.

The law has been adjudicated in various cases that have been referred to here, that if a sale be made of garden seed which is so warranted or represented, it is held as impliedly warranted to be good seed; that if it fails in that case to be such, the person who purchased, having used all proper diligence, and not failing to observe prudence in the examination of the seed before he put it in the ground, or in his caring for and watching the article as it grew, so that he might lessen the damages that might result to the other side by allowing his field to be occupied by a crop that would amount to nothing, when, by immediately destroying it, he would render his loss less by replanting it, he is entitled to damages, predicated to a principal extent on the value of the crop that ought naturally to have been raised; but when the party has relied to the utmost until the product is developed, certainly the various cases referred to show the rule of law to be that the purchaser of the seed is entitled to recover as damages the fair value of the crop which he should have raised—that is, such crop as under ordinary circumstances could be raised from seed of that character, considering all the hazards arising from the elements or from natural causes which might prevent a full crop. If in this case he was stopped, or found his crop was rendered entirely useless, why, of course, the amount which it would cost him to harvest his crop and prepare it for market would be reasonably a matter of deduction.

This, I apprehend, is the rule of damages in this case, and the case seems to me to be one which you will have no difficulty in solving one way or the other, on the testimony before you; if the plaintiff is entitled to recover, he has already stated that he had 18,750 heads of cabbage planted, and that he could have realized from $10 to $14 a hundred, less 25 cents for marketing.

The defendant asks me to charge with reference to the rule of damages, in regard to the probable profits, &c. He asks me to charge:

I. There being no allegation or proof of any bad faith on the part of the defendants and their agents, they must be regarded by the jury as having acted in good faith in the transaction.

This I decline to charge, as not in issue.

II. There is no proof which will warrant the jury in finding

Van Wyck v. Allen.

that the cabbage seed sold was to be that actually raised on the Van Wycklen (or Van Sicklen) farm at New Lots, Long Island, and at most it would only warrant them in finding that the cabbage was to be early flat Dutch cabbage of the Van Wycklen variety.

This I decline to charge otherwise than as charged.

X. It does not follow that if the plaintiff recovers, he can recover the value of a good crop, less the value of the crop raised. This I decline to charge. XI. If the plaintiff recovers, he can only recover what would be the ordinary value of the crop such as would ordinarily have been produced in the year 1872 from such seed as he bargained for, after deducting (1) the expense of raising the crop, and (2) the value of the crop actually raised. This I decline to charge. XII. What the jury are authorized to find as the measure of damages is the actual profit of raising such a crop as would ordinarily in the year 1872 come from the seed, if such as bargained for, and not the whole value of the crop. This I decline to charge. XIII. It is proper that the jury should be guided in estimating such damages by a fair, reliable estimate of the profit, per acre, of raising such a crop. This is denied, but the declension as to the several requests is to be taken in connection with the charge. XIV. That the jury should, in estimating the damages, take into account the uncertainty of finding a market for all the cabbages, and their liability to decay, and the time and trouble the plaintiff would have in finding for them and in securing their delivery in a market. And the uncertainty of the market; these are all matters which are problematical. The proof shows that that crop there in Bridgeport, when delivered, was worth a certain price, and you are not to take into account a speculation whether any portion of it should rot before it was sold, or whether he might be delayed in making a sale. The market value always is the price which can be immediately obtained for the article when brought into the market; therefore, whether there were chances of decay or otherwise, they are entirely matters of uncertainty, and too uncertain to be taken into consideration (to all of which rulings of the court, defendants' counsel duly excepted).

The jury found a verdict for the plaintiff for $1,972 13, and a motion on the judge's minutes for a new trial was denied.

*D. B. Eaton*, for appellant.

*N. A. Halbert*, for respondent.

CHARLES P. DALY, Chief Justice.—The judge left it to the jury to say whether the defendants sold to the plaintiff "flat Dutch cabbage seed raised by Van Wycklen on Long Island." This was the main question in the case. It was upon the evidence a question for the jury, and their finding upon it is conclusive. If the defendants sold it as seed of that variety, flat Dutch cabbage seed raised by Van Wycklen on Long Island, it amounted to a warranty that it was not only seed of that variety, but that it had been raised by Van Wycklen on Long Island (*Allan* v. *Lake*, 18 Ad. & El. N. S. 560, 565; *Blakeman* v. *Mackay*, 1 Hilt. 267; *Bradford* v. *Manley*, 13 Mass. 145; *Mason* v. *Chappell*, 15 Gratt. 571; *Hawkins* v. *Pemberton*, 51 N. Y. 198; *Wolcott* v. *Mount*, 36 N. J. 262).

The judge drew the attention of the jury to the distinction raised by the defendants, that if the article furnished was produced from seed which originally came from Van Wycklen, it would be of the description referred to in the sale. That if represented to have been raised on Long Island, the representation was complied with by supplying seed raised in Rhode Island by Mr. Potter, of the like character and quality, and added that he did not regard it of any great importance whether the seed was raised on Long Island or not, if it was the character of seed which was sold. This was presenting the question in the most favorable point of view for the defendants. It was, in fact, saying that they might find that though raised in Rhode Island, it was the kind of seed represented as Van Wicklen's flat Dutch cabbage seed raised on Long Island; being the product of that seed, though raised in another place, which was going, in my judgment, beyond what the evidence warranted. He afterwards, however, instructed the jury that

if the defendants represented these seeds to be early flat Dutch cabbage seeds of Van Wycklen's own growth, that then there had been a breach of the warranty. The evidence showed that the value of the seed was owing to the peculiarity of the place in which it was grown; a fact well understood by the plaintiff, as well as by Gleason, who had charge of the defendants' seed department, and who made the representation. He informed the plaintiff that the defendants had discarded all late varieties of cabbage seed, and were running wholly on flat Dutch; that they were selling Van Wycklen's flat Dutch, raised at New Lots, on Long Island. He described Van Wycklen's farm as a splendid locality for raising cabbage seed; that he had the finest place in the country for growing seed; being isolated from neighbors, where his seed would not be intermixed with other seed. It appeared from Van Wycklin's testimony that his farm, in consequence of its being in meadows, is so situated that no seeds can be grown within a quarter of a mile of it; a feature of great importance, as cabbage seed must not be produced near other plants of the same order, as turnips, cauliflower, broccoli, &c., or they will intermix, through their flowers, and produce mongrel varieties, or fail to head as cabbages at all; which is well known (The American Cyc. vol. 3, p. 323, 2 ed.) and is shown by the evidence in this case. Van Wycklen testified that the blossoms will be carried, so as to intermix with each other, a quarter of a mile, and the fact therefore, that no other plants of this order can be grown within a quarter of a mile where he raises these superior seeds, "supposed to be the best in the market," as "a good heading variety," gives them an especial quality from being raised by him in that particular locality, that does not necessarily attach to seeds which are their product, raised in other localities, and that may be exposed to influences which the plants raised upon his farm are not subject to.

All this the plaintiff knew. He had known Van Wycklen's farm for years. He testified, "I knew his locality and every inch of ground where his neighbors lived," and that the merit and value of these seeds, in the estimation of Gleason and of the plaintiff, arose from the peculiarity of the place where the

plants were grown, was evident from Gleason's dwelling upon the fact that it was isolated from neighbors, where the seed would not be intermixed with other seed, and the plaintiff telling Gleason that he had as good a place ; that his nearest neighbor was a half a mile off, &c.   The cabbage head is entirely the result of cultivation, for, as appears from the work already quoted, the original plant from which all forms of the cabbage spring, grows wild on the rocky shores and cliffs of England, with no appearance of a head, and that the varieties produced by cultivation are perpetuated only where care is taken to secure the conditions that produced them.   This is illustrated by what was proved in the present case.   It is a biennial plant. When the seed is sown, it produces the first season the full grown cabbage, and the next season the pods which contain the seed.   The seeds sold to the plaintiff were raised in Rhode Island by Mr. Potter from seeds, according to Gleason's testimony, which Van Wycklen had raised at his farm upon Long Island.   When planted by the plaintiff, vigorous and healthy plants sprung up, but not one headed into a cabbage, which, if it were the same seed, shows that in the intervening planting something had occurred which had changed the conditions and led to the production of a different form of the plant.   This was not brought about by anything which had occurred on the plaintiff's farm ; for other seed planted there headed into cabbage, whilst this particular seed did not, though otherwise the plants grew vigorously.

It is, I think, obvious, from what transpired between Gleason and the plaintiff, that what the former undertook to sell, and the latter supposed he was buying, when he sent his order, was seed of Van Wycklen's own raising, and not a product of that seed raised in some other place.   Gleason denied that he said that the seed was of Van Wycklen's raising, but he was unable to recollect what occurred in the conversation, and we must assume in support of the verdict, that the jury believed the plaintiff, and that there was such a warranty was the conclusion at which they arrived.   If there was any doubt respecting it, it was a question exclusively for them (*Murray* v. *Smith*, 4 Daly, 279; *Chapman* v. *March*, 19 Johns. 289; *Duffee* v.

*Mason*, 8 Cow. 26; *Whitney* v. *Sutton*, 10 Wend. 412; *Hawkins* v. *Pemberton*, 51 N. Y. 202, 205; *Allan* v. *Lake*, 18 A. & El. N. S. 565, 566).

The question of a warranty is not, as the defendants argue, limited to the written communications; but the letters or orders are to be taken together with the previous conversation that led to the giving of the orders.

The view I have taken of the case, dispenses with the necessity of considering many of the points argued by the defendants—such as the defendants' right to have the jury instructed that they were under no obligation to send seed of Van Wycklen's own raising; but that seed of the Van Wycklen variety, whether raised by him or not was all that was required. It only remains therefore to consider some of the exceptions taken to refusals of the judge to charge, to parts of his charge, and the rule of damages.

The judge was requested by the plaintiff to charge, that if the seeds were not the early flat Dutch cabbage seed of Van Wycklen's own growth, the plaintiff was entitled to recover, and the defendants' request was that there could be no recovery, unless the defendants warranted that the seeds had been raised on Van Wycklen's farm. Both of these requests the judge refused. If there were no evidence in the case to justify a finding that they were warranted to have been raised upon Van Wycklen's farm, the refusal of the defendants' request might have been a serious one, and involved the necessity of a new trial, as it might have been difficult to say what warranty they found, and what constituted the breach of it. But the evidence on this point was abundant, and fully comes up to the defendants' request, in support of the verdict. There is, moreover, a further answer that will appear in the consideration of the next exception.

The defendant excepted to so much of the judge's charge as stated in substance that the request of an article of a particular kind, or a particular quality, and the delivery of an article under such request, might be a basis for the finding of a representation or warranty; or where the goods are sold as of a particular kind, or to be used for a particular purpose, a jury

Van Wyck v. Allen.

will be justified in finding that they were warranted fit for the purpose. This is not exactly what the judge charged. What he charged was this. If the seed was sold as a particular article, known in the market by a particular name, the law implies that it is of that character, kind, or description; or if the buyer declares that he wants an article for a particular purpose, saying, have you got it, and will you sell it to me, and the vendor, knowing that the buyer relies upon his compliance with the request, supplies the article, the law implies a warranty that the thing furnished is the thing requested; and that this is the law is well settled (*Mason* v. *Chappell*, 15 Gratt. 572; *Murray* v. *Smith*, 4 Daly, 279; *Jones* v. *Bright*, 5 Bing. 533; *Hawkins* v. *Pemberton*, 51 N. Y. 198; *Bradford* v. *Manly*, 13 Mass. 138; Hilliard on Sales, 353, 3d ed.; Story on Sales, § 371).

Apart from the question of a warranty that the seed was of Van Wycklen's own raising, the written order was for Van Wycklen's flat Dutch cabbage seed; and the seed sold, when planted, produced no cabbage at all. There was certainly an implied warranty that it was flat Dutch cabbage seed, for it was that which was ordered. It was an article well known in the market, and was in foreign catalogues. The judge, in view of what the seed sold developed, left it for the jury to consider, as a question of fact, whether it was early flat Dutch cabbage seed, or even cabbage seed at all. And certainly the circumstance that a healthy, vigorous plant sprung up from it, without any cabbage upon it, afforded ground for a doubt upon the subject, notwithstanding the defendant's positive evidence of where the seed originally came from. All that Potter knew was that Gleason sent him cabbage seed, in 1869, marked simply flat Dutch, to raise seed from; which was all the knowledge he had respecting its character. He planted it, and raised thirty pounds of seed, ten of which he sent to the defendants, and did not raise any more of it after 1869. Gleason may have made some mistake in the seed sent to Potter. It may not, in fact, have been early Dutch, or have come from Van Wycklen's farm. It may, through mistake, have been some other seed; though from the evidence, the probability is that its failure arose from

intermixture, by raising it in too close proximity with other seed. There was, at all events, the singular fact that it produced no cabbage at all, though carefully sown, in a very favorable season, in ground well prepared, with even extra pains, upon a farm well adapted for the growth of that variety; that it was attentively looked after, and produced healthy, strong, fine plants, but with no cabbage. The evidence was that the field was literally covered with a growth of leaves; that it grew to a great height, three feet; and what the plaintiff, an experienced cultivator of cabbage, had never seen it before, run into seed the first season; 18,750 plants were set out, all of which lived and grew up in this manner; whilst upon the same soil, and in the same field, seed of another variety was planted, the plants of which all made heads. There was nothing in the condition of the soil, or in the cultivation, to cause this. The plaintiff had never known an instance like this, where the whole crop failed to produce heads. Nothing had been neglected in the soil, manure, or culture; and other cabbages were raised in the neighborhood that season, but none grew like this. Whether, therefore, it was even flat Dutch cabbage seed was a fair question, upon the evidence, for the jury, especially as the plaintiff testified to his belief that it was not even cabbage seed; and Van Wycklen, that it was hard to say; and if it was not, there was a breach of this warranty, in that the article sent was not the particular and well known article which had been ordered. There being, then, the warranty that it was early flat Dutch, and a question whether there was or was not a breach of this warranty, the defendants' request above referred to was too broad ;—that the plaintiff could not recover unless there was a warranty that it was seed which had been raised on Van Wycklen's farm.

There remain the exceptions taken to other refusals to requests to charge. I will pass upon them separately : 1st. There was evidence from which the jury might infer bad faith, for the defendants knew that the seeds sent were not raised by Van Wycklen, but by Potter. 2d. There was evidence from which the jury might find that the defendants did represent that the seeds were raised by Van Wycklen. With the exception of

the requests relating to the rule of damages, the other exceptions have also been substantially passed upon.

The 10th, 11th, 12th, 13th, and 14th, relate to the rule of damages. The rule laid down by the judge was a correct one, that the plaintiff was entitled to recover, as the measure of his damages, the fair value of the crop which would, under ordinary circumstances, have been raised if the seed had been what it was represented to be ; taking into consideration all the hazards arising from the elements, or from natural causes, which might have prevented a full crop, and deducting what it would have cost to harvest the crop and prepare it for market, an expense which was not incurred, as the entire crop failed (*Randall* v. *Raper*, Ellis B. & E. Rep. 84; *Passinger* v. *Thorburn*, 34 N. Y. 634 ; *Messmore* v. *N. Y. Shot Co.* 40 Id. 422 ; *Millburn* v. *Belloni*, 39 Id. 53 ; *Parks* v. *Morris Axe Co.* 54 Id. 586 ; *Reggio* v. *Braggiotti*, 7 Cush. 166 ; *Woolcott* v. *Mount*, 36 N. J. 262).

The rule laid down being the proper one, the defendants were not entitled to the instruction asked for in the 10th, 11th, 12th and 14th requests to charge. The expense of raising the crop enters into and forms a part of the market value of it. This outlay the plaintiff lost from the failure of the whole crop. To deduct the expense of raising it from the value, therefore, would be to deprive the plaintiff of what he actually lost, his own labor, the labor he may have paid for, and what he purchased and used for the purpose of cultivation. Taking the market value of such a crop as would, under ordinary circumstances, have been raised at the time, comes as near a true measure as can be attained, and gives the plaintiff what it may be assumed he has lost. The uncertainty of finding a market, the liability of the cabbages, if they had been produced, to decay, and the time the plaintiff might have lost in finding a market for them and delivering them, were, to a great part, embraced under the judge's rule that the harvesting and preparing the crop for market was to be deducted from the value, and other parts embraced conjectural matters, in respect to which there was no evidence. If the 14th request had been separated, some parts of it might have been proper; but the defendants were not entitled to the whole of it, and having

been submitted as an entire proposition, it was properly refused. The request of the plaintiff, which the judge charged and to which the defendants excepted, was, in a certain aspect of the case, abstractly correct; that, if the jury found that the seeds were not in good condition and reasonably suited for the planting and growth of cabbage, the plaintiff was entitled to recover; in respect to which it will be sufficient to refer to *Gray* v. *Cox* (4 B. & C. 108); *Jones* v. *Bright* (5 Bing. 533); *Bluett* v. *Osborne* (1 Stark. N. P. 384); *Brown* v. *Edginton* (2 Man. & Gr. 279); *Shephard* v. *Pybus* (3 Id. 868); *Williamson* v. *Allison* (2 East, 446); *Getty* v. *Roundtree* (2 Chand. 28); *Lord* v. *Grow* (39 Penn. 88); *Wright* v. *Hart* (18 Wend. 454); *Deming* v. *Foster* (42 N. H. 165); 2 Kent's Com. pp. 478, 479, 480, 4th ed.; and what has been already said in the present case upon the question, arising upon the evidence, whether the seed sent was in fact cabbage seed at all. This was not a matter which the plaintiff could ascertain by inspection, but in which he had to rely upon the seller alone, as is apparent from what has been stated respecting the cabbage plant, and from the evidence in the case. Even so experienced and successful a cultivator as Van Wycklen, after remarking that the plants which came up were not cabbage, declared, as before stated, that it was hard to say if they came from cabbage seed; and Scofield, who was familiar with the raising of cabbages, having raised them fifteen years, and who saw the plants that sprung up, was of the opinion that they were not the product of cabbage seed. The rule of *caveat emptor* can scarcely be said to apply in the sale of a particular article, where it is out of the power of the buyer to ascertain by inspection whether it is or is not the article required, and where he must of necessity rely upon the knowledge and representation of the seller. The cases cited hold that there is in such case an implied warranty on the part of the seller, as in the case of the sale of " blue vitriol," that it is the article so designated and known; a fact which the buyer could not ascertain by any practicable examination which he could make at the time (*Hawkins* v. *Pemberton*, 51 N. Y. 202). Where an article is sold as flat Dutch cabbage

seed, there would seem to be implied a warranty at least that it is cabbage seed—a fact which it is not practicable for the buyer to ascertain, until the seed is sown and the product comes up—and representing it as cabbage seed, implies that it is reasonably suited for the planting and growth of cabbage, in a case where it subsequently turns out that it was not cabbage seed at all. There may possibly be some doubt upon this point; a question upon the cases, whether this rule as to the suitableness of the thing for the particular purpose for which it is bought is sufficiently well established by authority (Hilliard on Sales, p. 335, 3d ed.); whether it is not limited to cases of articles ordered from a manufacturer, or to provisions sold for domestic use, and where an article is sold as of a particular kind or description; whether there is any rule except that there is a warranty that it is that article. However this may be, I do not feel, in this case, where the seeds proved to be of no value whatever as cabbage seeds of any kind, that it is sufficiently clear that the judge erred in what he said as to their being reasonably suited to the planting and growth of cabbage, and am not, therefore, willing to hold that a new trial must be granted upon that ground.

The judgment should be affirmed.

JOSEPH F. DALY and VAN HOESEN, JJ., concurred.

Judgment affirmed.