DESSON *v.* ANTONY *et al.*

(*Common Pleas of New York City and County, General Term.* April 6, 1891.)

ASSUMPSIT—MONEY HAD AND RECEIVED.

The plaintiff purchased a pony of the defendants for $100, which was paid. It was warranted "sound and kind," but, being not kind, was received back by the sellers, who agreed to "keep giving [the purchaser] a pony until he was satisfied." Three more exchanges were made, and when a pony was found to suit, the sellers demanded a "boot" of $110 between the third and fourth pony, still keeping the plaintiff's $100 originally paid, and refusing to deliver the fourth pony until payment of the boot. *Held*, that a judgment was rightly rendered against the defendants for the $100 received by them for the first pony.

Appeal from seventh district court.

Action by Simon Desson against Carl Antony and another to recover money had and received. There was a judgment for the plaintiff, and the defendants appeal.

Argued before BISCHOFF, P. J., and PRYOR, J.

*Frederick H. Ernst,* for appellants. *Leon Lewin,* for respondent.

PRYOR, J. The appellants sold respondent a pony horse, with a written warranty that he was "sound and kind." The purchase price, $100, was paid. On trial the horse proved anything but kind, and so there was a breach of warranty. The breach of warranty, however, did not entitle the purchaser to damages. Nevertheless, the buyer returned the horse, and the sellers received him, saying that they "would keep giving me a pony until I was satisfied." Thereupon they gave the plaintiff another horse, with a warranty that he was sound and kind. This horse, proving unsound, from a "deformity in the neck," was returned, and received by the sellers, who gave plaintiff a third horse, with a warranty (*Hawkins* v. *Pemberton,* 51 N. Y. 198) that he was "all right and perfectly kind; just the pony your boy wants." But this third horse had an ugly habit of lying down with the boy in the middle of the street, and of rearing on his hind feet when the girth was tightened. So the third pony was returned, and was accepted by the sellers. Then a fourth pony was produced; but, having distemper, the seller said they would cure him, and the buyer answered that he would "take him in exchange for the other." Accordingly the buyer sent for the pony, but the sellers demanded "$110 to boot," which the buyer refused to pay, and so the negotiation terminated; hence this action for the $100 paid for the first pony. Plaintiff's demand is met by a counter-claim of $81, expense of the keep of the fourth pony. Thus plaintiff is out of pocket $100; has no horse to show for it; and is, besides, required to pay $81 for the keep of a horse which defendants refused to deliver to him except on payment of $110 "to boot." Upon the evidence, the manifest agreement between the parties was that for the $100 paid for the first pony the defendants would eventually furnish plaintiff a pony to his satisfaction. Two ponies were successively delivered to the plaintiff in exchange for the first; but they, being unkind or unsound, were taken back by the defendants; and when, finally, plaintiff found a pony to his purpose, he was told that he could not have him except on payment of $110 additional. This was not the bargain between the parties, but rather that, for the $100 received, defendants would continue to exchange until plaintiff was suited. Defendants, however, declined a further exchange except on a further payment of more than double the original paid. This demand plain-

tiff righteously resisted. As the parties never agreed upon the price for the fourth pony, and defendants refused to deliver him, the title to him remained in defendants, and they cannot charge plaintiff with the keep of their own property. The case was well decided by the court below, and the judgment must be affirmed.